# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JULIE A. GASKINS, )<br><br>Plaintiff, )<br><br>v. )<br><br>WILLIAMS & CONNOLLY LLP )<br><br>Defendant. ) | Civ. Action No. 08-1576 (EGS) |

## MEMORANDUM OPINION

Plaintiff Julie Gaskins is an African-American woman formerly employed by the law firm of Williams & Connolly LLP, the defendant, as a legal secretary. She alleges race discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Pending before the Court is defendant's motion for summary judgment. Upon consideration of defendant's motion, plaintiff's opposition, the reply and surreply thereto, the applicable law, the entire record, and for the reasons stated below, the defendant's motion is hereby **GRANTED**.

### I. Background

Plaintiff was hired as a legal secretary in April 2005, working initially as a "floating" secretary.[1] Plaintiff's claims

---

[1] A "floating" secretary at the firm is one who is not assigned

are based on a series of events that took place in 2006 and 2007. First, in February 2006, plaintiff came to believe a pay disparity between African-American secretaries and Caucasian secretaries existed at the firm. Am. Compl. ¶ 11. She approached attorneys Ana Reyes and Catherine Duval, the attorneys to whom she was assigned at the time, and raised the issue. Decl. of Julie A. Gaskins ("Gaskins Decl.") ¶¶ 11-12.[2] Ms. Reyes and Ms. Duval informed plaintiff that they would speak with the firm's Executive Director, Lynda Shuler, and the firm's Chief Administrative Officer and Director of Human Resources, Jennifer Scott. After doing so, Ms. Duval met again with plaintiff and informed her that no pay disparity existed. Gaskins Decl. ¶ 13. In addition, plaintiff alleges that Ms. Duval asked "even if the pay disparity existed, what are you going to about [sic] it?" and also stated that "even if you decided to take this 'outside' the office, . . . you will not get beyond a motion to dismiss." Am. Compl. ¶ 13.

In May 2006, another incident occurred. The parties

---

to a particular attorney, but rather assigned on an as-needed basis depending on absences and workload. Def.'s Statement of Material Undisputed Facts Supp. Mot. Summ. J. ("Def.'s Statement of Facts") ¶ 4.

[2] As confirmed by plaintiff's counsel at the status hearing held on March 8, 2011, the Amended Complaint does not assert a claim of discrimination based upon unequal compensation. However, plaintiff's actions regarding the perceived pay disparity are relevant to plaintiff's retaliation claim.

dispute whether plaintiff or Ms. Reyes was to blame, but essentially it appears a document was mailed to the wrong recipient. Gaskins Decl. ¶¶ 14-15; Def.'s Statement of Facts ¶¶ 16-17. The next day, while performing her duties for Ms. Duval, plaintiff discovered an email exchange between Ms. Duval and Ms. Reyes regarding the incident the day before. The email from Ms. Reyes to Ms. Duval blamed plaintiff for the error and stated "I'm through the roof I'm so angry." Gaskins Decl. Ex. 6. In response, Ms. Duval wrote, "[d]o not make her quit," and Ms. Reyes replied "[y]ou would be ballistic if this happened to you." Gaskins Decl. Ex. 6. Plaintiff took a copy of the email to Ms. Scott. Decl. of Jennifer Scott ("Scott Decl.") ¶ 17. Plaintiff requested that she no longer be required to work for Ms. Reyes or Ms. Duval; the request was granted, and plaintiff resumed working as a floating secretary. Am. Compl. ¶ 18; Scott Decl. ¶¶ 17-19.

Plaintiff also met with Ms. Reyes and Ms. Duval to discuss the incident. Gaskins Decl. ¶ 21; Scott Decl. ¶ 19. At this meeting, plaintiff alleges that Ms. Reyes and Ms. Duval told her that "if she did not continue to work for them that she would be 'ruined' and that she would not be able to get a job anywhere." Am. Compl. ¶ 20; Gaskins Decl. ¶ 21. Plaintiff alleges that she then met with Ms. Scott to discuss the comments made by Ms. Reyes and Ms. Duval but that "Ms. Scott said and did nothing

3

about the threats made to Ms. Gaskins[,] leaving Ms. Gaskins to believe that this type of behavior is sanctioned by the firm." Am. Compl. ¶ 21.

Plaintiff also asserts that she overheard a racial slur in September 2006. In particular, plaintiff alleges that she overheard a conversation between two attorneys regarding the pronunciation of the name of a new associate whose first name was Negar. According to plaintiff, and as she reported in a Harassment Complaint Form submitted the next day to the firm's Harassment Complaint Committee, one associate asked another "how do you pronounce this name?" and the other attorney responded by stating "maybe she has a nick-name like Niggie." Gaskins Decl. Ex. 17.[3]

Approximately a month later, on October 16, 2006 plaintiff wrote an email to the Human Resources Manager regarding difficulties plaintiff was having with attorney Luba Shur for

---

[3] Defendant asserts that "[i]n response to Plaintiff's complaint, two partners who are members of the Harassment Complaint Committee . . . promptly and thoroughly investigated the complaint. They spoke with Plaintiff immediately (the next business day after she made her complaint), and conducted interviews of all individuals involved[.]" Def.'s Statement of Facts ¶ 29. According to defendant, the attorneys who had the conversation and another secretary who also overheard the conversation denied that a racial slur had been used, and accordingly the Harassment Complaint Committee "decided that the appropriate resolution was to counsel [the attorneys] about the need to avoid conversations that might be misinterpreted by others." Def.'s Statement of Facts ¶¶ 29-32. Plaintiff does not dispute that this was the firm's response to her Harassment Complaint Form.

whom she was working at the time. According to plaintiff's email, plaintiff was "trying to organize Luba's files, however, [Ms. Shur's] requests will vary and it is beginning to affect me emotionally and physically." Gaskins Decl. Ex. 23. In her email, plaintiff also described what she believed to be unwarranted complaints from Ms. Shur about binders plaintiff had assembled and stated that, "I don't know if [Ms. Shur's] new attitude is because she was teamed with a new attorney and she cannot monopolize my time or if it has something to do with the harassment complaint that I filed against her fellow co-workers." Gaskins Decl. Ex. 23. Three days later, beginning on October 19, 2006, plaintiff took a leave of absence until November 6, 2006.[4] Scott Decl. 23; Gaskins Decl. Ex. 19.

After returning from leave, plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Office ("EEOC") on November 10, 2006. Gaskins Decl. Ex. 21. She described the particulars of the discrimination as follows:

> I started working for [Williams & Connolly] on April 16, 2005 as a Legal Secretary. During my tenure, I have noticed that [the Firm] frequently assigns African-American secretaries the most 'difficult' attorneys in the Firm, but gives Caucasian secretaries preferential treatment, including giving them 'easier' assignments. Additionally, African-American

---

[4] On October 19, 2006, plaintiff's doctor faxed a letter to the firm. The letter states "Ms. Gaskins is suffering from anxiety. I have started her on medication which takes 2 [weeks] to become effective so I have instructed her to take a leave of absence from work until November 6, 2006[.]" Gaskins Decl. Ex. 19.

> secretaries are paid substantially less than Caucasian
> secretaries. In February 2006, I complained about the
> disparate treatment to Attorneys Ana Reyes and Kate
> Duval. Ms. Duval later told me that the Firm
> researched the matter. Ms. Duval went on to state
> that even if I decided to leave the Firm and decided
> to sue for discrimination, I would not get further
> than a 'Motion [to] Dismiss.'
>
> After an incident occurred with a filing on May 19,
> 2006, I was informed by then Human Resource Manager,
> Erin von Felden that I would be back in the floating
> secretary pool. On May 22, 2006, I had a meeting with
> Ms. Duval and Ms. Reyes. At the conclusion of this
> meeting, I felt like [the Firm] was trying to make me
> quit after complaining about the pay disparity. As a
> result, I have applied for other positions within the
> Firm, but have not been selected.

Gaskins Decl. Ex. 21. In the Charge of Discrimination,

plaintiff also recounted the incident involving the alleged

racial slur described above. Gaskins Decl. Ex. 21.

Plaintiff took another leave of absence from late November

to early December.[5] Upon her return to the office in early

December 2006, plaintiff was re-assigned to work as a floating

secretary. On December 4, 2006, an attorney informed Human

Resources that he was dissatisfied with plaintiff's work. Scott

Decl. Ex. C. Three days later, on December 7, 2006, Ms. Scott

requested that plaintiff meet with her and the Human Resources

Director. Gaskins Decl. ¶ 39. At that meeting, plaintiff

---

[5] Another letter from her doctor, dated December 5, 2006, states
that plaintiff "has been unable to return to work from [November
27, 2006 to December 3, 2006]. This patient is allowed to
return to work on [December 4, 2006] . . . . Ms. Gaskins was
under medical care[.]" Gaskins Decl. Ex. 26.

alleges that Ms. Scott "falsely accused" her of "ignoring" one attorney and failing to complete an assignment for another. Am. Compl. ¶ 23; Gaskins Decl. ¶ 39. In her declaration, plaintiff states that "[a]t the conclusion of the [December 7, 2006] meeting, I verbally informed Ms. Scott and [the Human Resources Manager] that at this point I was very concerned about retaliation." Gaskins. Decl. ¶ 41.

In addition to the above events, plaintiff also applied for several positions within the firm in 2006 and 2007. In particular, she applied for the positions of Senior Litigation Paralegal, Human Resources Manager, Staff Recruiting Manager, and Contract Attorney Manager. In addition, on at least three separate occasions, plaintiff applied for different secretarial positions with particular attorneys at the firm. Plaintiff was never selected for any of these positions.

Plaintiff resigned from the firm in February 2007. After resigning, plaintiff alleges that the firm subjected her to further retaliation. She alleges that the defendant "requir[ed] certain people to sign release forms before they would discuss anything relevant to her employment." Am. Compl. ¶ 30. In addition, she alleges that she requested that her parking deduction be returned to her immediately but that it took the firm nearly 3 months to return her money. Am. Compl. ¶ 28.

## II.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Though the Court must draw all justifiable inferences in favor of the non-moving party in deciding whether there is a disputed issue of material fact, "[t]he mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

## III. Analysis

Plaintiff alleges claims of discrimination on the basis of race and retaliation in violation of Title VII and § 1981.[6]  In addition, plaintiff alleges that she was subjected to a hostile work environment and that she was constructively discharged. Each of these claims is addressed in turn.

_____

[6] Because this Circuit has indicated that the same *McDonnell Douglas* burden shifting framework applies to claims under either statute, *see Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1413 n.7 (D.C. Cir. 1988), the Court does not distinguish between the two statutes in its analysis.

## A.    Discrimination Claim

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  "This statutory text establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin."  *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008).  An adverse action in the discrimination context is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Preston*, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)).

"Once the plaintiff has made out a prima facie case, [the defendant] bears the burden of producing a non-discriminatory explanation for the challenged personnel action."  *Ford v. Mabus*, 629 F.3d 198, 201 (D.C. Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973)).  After defendant has produced a legitimate, non-discriminatory reason

for the action, plaintiff bears the burden of showing either that "the employer's reason is pretextual or . . . that it was more likely than not that the employer was motivated by discrimination." *Id.* (quoting *Forman v. Small*, 271 F.3d 285, 292 (D.C. Cir. 2001)).

At the summary judgment stage, "once the employer asserts a legitimate, non-discriminatory reason, the question whether the employee actually made out a prima facie case is no longer relevant." *Brady*, 520 F.3d at 493 (internal quotation marks omitted). In other words, once an employer provides a legitimate, non-discriminatory explanation for the challenged action, "the district court need not - and should not - decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Id.* In this circumstance, the Court must assess "whether [the plaintiff] produced evidence sufficient for a reasonable jury to find that the employer's stated reason was not the actual reason and that the employer intentionally discriminated against [the plaintiff] based on his race." *Id.* at 495.

### 1. Failure to Promote

Plaintiff alleges that she "applied for several positions within the firm . . . and even with an outstanding performance evaluation, she was denied the opportunity for advancement." Am. Compl. ¶ 22. In particular, plaintiff applied for the

positions of Senior Litigation Paralegal, Human Resources
Manager, Staff Recruiting Manager, and Contract Attorney
Manager. She was not hired for any of these positions.[7]
Plaintiff also applied for various secretarial positions. She
was not selected for any of these positions.

First, with respect to the various secretarial assignments
sought by plaintiff, defendant challenges plaintiff's prima
facie case, arguing that "as Plaintiff has admitted, a
secretary's salary, benefits, and opportunities are the same
whether the secretary works for a particular attorney or in the
floater pool." Def.'s Reply at 11. The Court agrees that
plaintiff has failed to state a claim of discrimination on this
basis because she has wholly failed to identify an "adverse
employment action" that resulted from the defendant's failure to
select her for one of these other secretarial positions.
Plaintiff has not identified any significant differences between
the various secretarial positions at the firm such that a
refusal to select her amounted to a "significant change in

---

[7] Plaintiff also claims to have applied for the position of
Litigation Support Project Manager, but defendant disputes this.
The only evidence offered by plaintiff is an email showing that
she inquired about the position and, in response, was informed
that it was an IT position requiring experience with several
litigation discovery databases and software. Gaskins Decl. Ex.
10. In the absence of evidence that plaintiff actually applied
for this position, the court does not consider this as a basis
for plaintiff's claim.

employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas*, 559 F.3d at 552 (internal quotation marks omitted); *see also Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) ("[M]inor inconveniences and alteration[s] of job responsibilities [do] not rise to the level of adverse action necessary to support a claim.") (quoting *Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002)).

With respect to the non-secretarial positions for which plaintiff applied, defendant asserts that there are legitimate, non-discriminatory reasons for the firm's decision not to hire plaintiff. In particular, defendant cites to plaintiff's testimony during her deposition in which plaintiff admitted that the individuals selected for the Recruiting Manager position and the Contract Attorney Manager position were more qualified than she. Def.'s Statement of Facts ¶¶ 46, 48; Gaskins Dep. Tr. at 288:20-289:5, 307:11-20. Furthermore, defendant asserts that the Senior Litigation Paralegal required a bachelor's degree, which plaintiff does not have. Def.'s Statement of Facts ¶ 14. Plaintiff does not dispute any of these assertions by defendant.

Finally, for the position of Human Resources Manager, plaintiff asserted in her deposition that she was equally qualified, if not more so, as the person hired for the position.

However, defendant has submitted evidence showing that the individual who was hired instead of plaintiff as the Human Resources Manager had served as the defendant's Employment Manager for two years, managing all aspects of recruiting and hiring while supervising and assisting in the daily operations for Human Resources. Def.'s Statement of Facts ¶ 45. The successful applicant also had significant human resources experience at a variety of other jobs in her 22-year career. Def.'s Statement of Facts ¶ 45. In contrast, plaintiff's experience was mainly secretarial; her other experience included work as a file clerk and two years as an office manager for a small law firm. Def.'s Statement of Facts ¶ 45. In her response to defendant's motion for summary judgment and in her other filings, plaintiff again does not contest these factual assertions by the defendant.

The Court finds that defendant has produced legitimate, non-discriminatory reasons for the challenged actions. Accordingly, plaintiff now bears the burden of showing either that "the employer's reason is pretextual or . . . that it was more likely than not that the employer was motivated by discrimination." *Ford*, 629 F.3d at 201. Plaintiff has failed to do so. In response to defendant's motion, plaintiff has supplied the Court with nothing more than vague, conclusory allegations that the defendant failed to promote her because of

her race. *See, e.g.*, Pl.'s Opp. at 2 ("Plaintiff contends that she was not considered [for promotions] notwithstanding being the most qualified candidate for one or more positions[.]"). Accordingly, the Court concludes that plaintiff has failed to state a claim of discrimination based upon a denial of promotions.

### 2. Assignment to "Difficult" Attorneys

Plaintiff also alleges that "the majority of the difficult attorneys have African-American secretaries." Gaskins Dep. Tr. 109:8-9; *see also* Pl.'s Opp. at 2. However, the Court again agrees with defendant that plaintiff has failed to establish a prima facie case of race discrimination because such an allegation fails to state an adverse employment action. "Courts have consistently held that a claim of an undesirable assignment, without any effect on salary, benefits, or grade, is similar to claims regarding lateral transfers, and thus does not constitute an adverse action." *Halcomb v. Office of the Senate Sergeant-At-Arms*, 563 F. Supp. 2d 228, 240 (D.D.C. 2008) (internal quotation marks omitted), *aff'd*, 368 Fed. Appx. 150 (D.C. Cir. 2010); *see also Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006) ("Mere idiosyncrasies of personal preference are not sufficient to state an injury.") (quoting *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999).

Accordingly, and having considered the allegations of the

14

amended complaint, plaintiff's response to the motion for summary judgment, plaintiff's declaration, as well as all of the evidence submitted by plaintiff in support of her discrimination claim, the Court concludes that plaintiff's claim of discrimination under Title VII or § 1981 fails.

### B.    Retaliation Claim

The anti-retaliation provision of Title VII prohibits an employer from "discriminat[ing] against any of his employees or applicants for employment . . . because [the employee] has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."   42 U.S.C. § 2000e-3(a).

"In order to prevail upon a claim of unlawful retaliation, an employee must show she engaged in protected activity, as a consequence of which her employer took a materially adverse action against her." *Porter v. Shah*, 606 F.3d 809, 817 (D.C. Cir. 2010) (quoting *Taylor*, 571 F.3d at 1320).   An action is materially adverse in the context of a retaliation claim, if plaintiff can show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*

& *Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); see also *Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008); *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008). However, "[e]ven if the alleged retaliatory measures were materially adverse actions," defendant may rebut plaintiff's claims by "assert[ing] legitimate, nondiscriminatory reasons for each act[.]" *Baloch*, 550 F.3d at 1200. If defendant rebuts plaintiff's claims in this manner, plaintiff's retaliation claims will not survive unless plaintiff is able "to produce sufficient evidence that would discredit those reasons and show that the actions were retaliatory." *Id.*

Plaintiff identifies several actions by defendant which she alleges amounted to retaliation after she raised the issue of pay disparity to the firm. In particular, plaintiff points to verbal and written interactions with various individuals at the firm. She also bases her claim of retaliation on allegations that she was denied promotions at the firm and that her raise in early 2007 was 4.5% (as opposed to highest given, 5.5%). In support of its motion for summary judgment on plaintiff's retaliation claim, defendant argues that many of the challenged actions did not rise to the level of materially adverse actions; for those actions that were materially adverse, the defendant asserts that it had legitimate, non-retaliatory reasons.

### 1.  Verbal and Written Communications

Regarding plaintiff's allegations of retaliatory verbal and written communications, "[t]he Supreme Court . . . has emphasized that sporadic verbal altercations or disagreements do not qualify as adverse actions for purposes of retaliation claims." *Baloch*, 550 F.3d at 1199.  In particular, courts have distinguished between "material adversity" and "trivial harms." *Id.; see also Burlington*, 548 U.S. at 68  ("Title VII, we have said, does not set forth a general civility code for the American workplace.") (internal quotation marks omitted).

Upon close examination of plaintiff's allegations, as well as the emails, declarations and evidence offered in support of her allegations, the Court concludes that plaintiff has failed to show that any of the verbal and written interactions cited by plaintiff amounted to a materially adverse action.  For example, the Court concludes that the plaintiff's allegations relating to the email exchange between Ms. Duval and Ms. Reyes criticizing plaintiff, in which one attorney wrote, "[d]o not make [plaintiff] quit," Gaskins Decl. Ex. 6, fail to state a materially adverse action such that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68.  Not only was plaintiff not an intended recipient of the email, plaintiff fails to demonstrate that "a reasonable employee would have

17

found the challenged action materially adverse." *Baloch*, 550
F.3d at 1198.

Similarly, plaintiff's assertion that Ms. Duval told her
that "even if you decided to take this [the allegations of pay
disparity] 'outside' the office, that you will not get beyond a
motion to dismiss," Am. Compl. ¶ 13, is insufficient to support
a retaliation claim. Even assuming that plaintiff's allegations
are true, such a statement does not amount to a materially
adverse action because plaintiff has not shown how it caused her
harm. *See, e.g.*, *Steele*, 535 F.3d at 696; *Kelly v. Mills*, 677
F. Supp. 2d 206, 226 n.23 (D.D.C. 2010) (concluding certain
events were not materially adverse because "plaintiff has not
explained how these events caused him *any* harm"). Plaintiff has
failed to show how this statement by Ms. Duval, functionally
equivalent to Ms. Duval's statement to plaintiff that no pay
disparity between African-American and Caucasian secretaries
existed at the firm, amounted to a *harm* that a reasonable
employee would have found materially adverse.

### 2. The 2007 Raise and Denial of Promotions

Plaintiff's claim of retaliation based upon allegations
that she was denied the opportunity for promotion at the firm
and she was given a 4.5% raise instead of a 5.5% raise in 2007
also fail. Although defendant does not dispute that plaintiff
has stated a prima facie case of retaliation with respect to

these particular allegations, defendant has rebutted plaintiff's claims by asserting legitimate, nondiscriminatory reasons for each act.

First, defendant has asserted non-retaliatory reasons for how plaintiff's raise was computed. Defendant asserts that "[a] portion of the increase is determined based on the secretary's performance evaluation, and a smaller portion is based on the 'extra service award,' which is arrived at using a host of objective factors such as volunteering for standby shifts on weekends or weeknights, and working overtime. Plaintiff received a smaller 'extra service award' for her work in 2006, and thus her 2007 raise was smaller by one half of one percent. In contrast with her efforts the prior year, in 2006 Plaintiff only worked 40.75 hours of overtime (as compared to 75.25 in 2005), she volunteered for weekday evening standby approximately nine times (as compared to 21 times in 2005) and for weekend standby just one time (as compared to four times in 2005)." Def.'s Mem. at 14-15; see also Scott Decl. ¶¶ 28-32; Def.'s Statement of Facts ¶¶ 10, 39. Furthermore, as discussed above, defendant has also submitted evidence, including plaintiff's own deposition testimony, that plaintiff was either not qualified for the positions she applied for or that the successful applicants were substantially more qualified. Plaintiff has not disputed any of the relevant facts asserted by defendant.

Because defendant has thus rebutted plaintiff's claims of retaliation, plaintiff has the burden "to produce sufficient evidence that would discredit those reasons and show that the actions were retaliatory." *Baloch*, 550 F.3d at 1200; *see also Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007) ("In order to prove the [the defendant's] explanations for alleged acts of discrimination or retaliation are pretextual, [plaintiff] must show both that the reason was false, and that discrimination or retaliation was the real reason.") (internal quotation marks omitted).

Plaintiff, however, offers nothing but conclusory allegations in response to the non-retaliatory reasons asserted by defendant. For example, in her Surreply to Defendant's Reply Memorandum in Support of Defendant's Motion for Summary Judgment ("Plaintiff's Surreply"), plaintiff merely asserts that "[d]efendant erroneously proffered to this Court that [plaintiff] failed to establish a causal connection between the protected activity and the decision regarding her merit pay increase for 2007." Pl.'s Surreply at 13. This assertion is insufficient to carry plaintiff's burden of showing that the legitimate, non-discriminatory reasons asserted by defendant are false. The Court also notes that in her Statement of Material Disputed Facts, plaintiff fails to even *mention* the 2007 raise or any facts surrounding the decision to give plaintiff a 4.5%

increase instead of a 5.5% one. Similarly, plaintiff makes only vague, conclusory assertions that she was more qualified for the positions she sought than the individuals selected, while failing to offer any specific contradictions to defendant's statements regarding plaintiff's own credentials as compared to the credentials of the individuals hired in her stead.[8]

---

[8] In addition to the retaliation plaintiff alleges she suffered while employed by the firm, plaintiff also alleges that the defendant retaliated against her after she resigned by refusing to refund her parking deduction in a timely fashion and by requiring potential employers to sign release forms before providing information related to plaintiff's employment. Am. Compl. ¶¶ 28-30. Upon consideration of the evidence submitted by defendant in response, including the affidavits of defendant's Benefits Administrator, the defendant's Executive Officer and the defendant's Director of Human Resources, the Court concludes that defendant has also offered legitimate, non-discriminatory reasons for these actions. *See, e.g.*, Decl. of Laurie Jackson ¶¶ 3,7 ("I explained to Ms. Gaskins that Williams & Connolly could reimburse her as soon as she filled out the standard reimbursement form and submitted her parking receipt. . . . [T]wo business days after Ms. Gaskins submitted the required documentation, I mailed Ms. Gaskins the [parking] reimbursement check[.]"); Decl. of Lynda Schuler ¶ 12 ("The Firm's policy is to verify dates of employment, position, and salary. . . . If a potential employer or other entity calls Williams & Connolly asking for information regarding an employee or former employee, but does not provide the dates of employment, position and salary of the individual about whom they are seeking information, Williams & Connolly requires that the employee consent before it will supply that information."). Plaintiff has not produced any evidence showing defendant's asserted reasons are false; she merely asserts again in her response to the motion for summary judgment that "[d]efendant imposed delays and selectively imposed requirements upon the Plaintiff regarding reimbursements and employment references."

Accordingly, having considered all of plaintiff's allegations and supporting evidence related to plaintiff's claim of retaliation, the Court concludes that she has largely failed to identify materially adverse actions. Where she has done so, defendant has asserted legitimate, non-retaliatory reasons for the challenged actions, and plaintiff has failed "to produce sufficient evidence that would discredit [defendant's] reasons and show that the actions were retaliatory[.]" *Baloch*, 550 F.3d at 1200; *see also Ginger v. District of Columbia*, 527 F.3d 1340, 1347 (D.C. Cir. 2008) (retaliation claim failed because "allegations of retaliation are conclusory, vague, and for the most part unsubstantiated.").

### C.    Hostile Work Environment Claim

To prevail on a hostile work environment claim, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory

---

Pl.'s Opp. at 2; *see also* Gaskins Decl. ¶46.

conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).

The only identifiable allegation of "intimidation, ridicule or insult" that would support a hostile work environment claim is plaintiff's assertion that she overheard a conversation involving a racial slur. However, even assuming that plaintiff's version of the conversation is accurate, the conversation described by plaintiff is insufficient to support a claim of a hostile work environment. Looking at the "totality of the circumstances," the conduct described by plaintiff was not "pervasive." *Baloch*, 550 F.3d at 1201. Furthermore, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005). Plaintiff in the instant case fails to show that her workplace was "*permeated* with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Id.* (emphasis added); *see also Lester v. Natsios*, 290 F. Supp. 2d 11, 31 (D.D.C. 2003) (holding that plaintiff failed to establish a prima facie case of hostile work environment because the events alleged were "not, individually or collectively, sufficiently 'severe' and

'pervasive' to move beyond 'the ordinary tribulations of the
workplace' and 'create an abusive working environment'")
(quoting *Faragher*, 524 U.S. at 787-88).  Accordingly,
plaintiff's claim of a hostile work environment also fails.

### D.    Constructive Discharge

Explaining the plaintiff's burden when bringing an
employment discrimination claim under Title VII on the theory of
constructive discharge, the D.C. Circuit has held:

> [A] plaintiff bringing an employment discrimination
> claim under Title VII on the theory of 'constructive
> discharge' must show that the employer deliberately
> created intolerable work conditions that forced the
> plaintiff to quit.  The inquiry is objective: Did
> working conditions become so intolerable that a
> reasonable person in the employee's position would
> have felt compelled to resign? We have stated before
> that the mere existence of workplace discrimination is
> insufficient to make out a constructive discharge
> claim; constructive discharge . . . requires a finding
> of discrimination and the existence of certain
> aggravating factors.  'Aggravating factors' are those
> aspects of a discriminatory work environment that, by
> making the workplace so disagreeable, prevent the
> reasonable employee from seeking remediation on the
> job.

*Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006) (internal
citations and quotation marks omitted); *see also Dashnaw v.
Pena*, 12 F.3d 1112, 1115 (D.C. Cir. 1994) ("[I]n order to find
constructive discharge in a case involving a claim of
discrimination, a District Court must find not only intentional
discrimination, but also 'aggravating factors.'") (citing *Clark
v. Marsh*, 665 F.2d 1168, 1174 (D.C. Cir. 1981)).

Furthermore, this Circuit has explained that "[g]enerally, a failure to promote will not constitute constructive discharge, nor will a change in job duties, a transfer, . . . criticism, pressure from a supervisor, or being ignored by co-workers." *Vietch*, 471 F.3d at 131. "A Title VII plaintiff must . . . mitigate damages by remaining on the job unless that job presents such an aggravated situation that a reasonable employee would be forced to resign." *Clark* 665 F.2d at 1173 (internal quotation marks omitted).

Plaintiff's claim of constructive discharge rests entirely on vague, conclusory allegations in her amended complaint and her declaration. She has failed to offer any specific allegations that would support this claim. For example, she alleges in her amended complaint that "after months of consistent retaliation and being force [sic] to work in a hostile work environment, the Plaintiff was forced to resign." Am. Compl. ¶ 25. Similarly, in her response to defendant's motion for summary judgment, she states that she "could not suffer any further from the pattern of Defendant's behavior and she was reluctantly 'constructively discharged.'" Pl.'s Opp. at 1. Plaintiff also asserts that "a factual dispute exists regarding a conspiracy to force the Plaintiff to quit her employment with Defendant." Pl.'s Statement of Material Facts at 3.

The above assertions by plaintiff, however, are unsupported by the record before the Court. Plaintiff has plainly not alleged enough to state a claim of constructive discharge. Plaintiff has not shown that her working conditions "bec[a]me so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Veitch*, 471 F.3d at 130. The D.C. Circuit has made it clear that, in order for plaintiff to demonstrate constructive discharge, she must show that the resignation was effectively "involuntary." *See, e.g.*, *Aliotta v. Bair*, 614 F.3d 556, 566-567 (D.C. Cir. 2010) ("Resignations or retirements are presumed to be voluntary. . . . In certain cases, the doctrine of constructive discharge enables an employee to overcome the presumption of voluntariness and demonstrate she suffered an adverse employment action by showing the resignation or retirement was, in fact, not voluntary."). Plaintiff's allegations, however, fail to support a claim that her resignation was "involuntary." Accordingly, upon review of plaintiff's allegations in their entirety and the evidence upon which plaintiff has based her claim of constructive discharge, the Court concludes that plaintiff has failed to state facts that would show that defendant "deliberately created intolerable work conditions that forced the plaintiff to quit," *Veitch* 471 F.3d at 130, and has therefore failed to state a claim of constructive discharge.

**IV. CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is hereby **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

SIGNED:    **Emmet G. Sullivan**
               **United States District Court Judge**
               **March 31, 2011**